IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANN MARIE BALL, )
 )
     Plaintiff, )
 )
    v. ) Civil Action No. 18-159-E
 )
COMMISSIONER OF SOCIAL SECURITY, )
 )
     Defendant. )

O R D E R

AND NOW, this 26th day of September, 2019, upon consideration of the parties' cross motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (1) failing to find that Plaintiff's physical impairments meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically Listing 1.04, at Step Three

1

of the sequential analysis; (2) failing to find that Plaintiff's mental impairments meet the severity of Listing 12.04; (3) improperly formulating Plaintiff's residual functional capacity ("RFC") assessment and her corresponding hypothetical question to the vocational expert ("VE"); (4) failing to consider all of the VE's testimony; and (5) denying Plaintiff a fair hearing. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as her ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, Plaintiff contends that the ALJ erred in finding that her physical impairments do not meet the severity of Listing 1.04 at Step Three of the sequential analysis. At the outset, the Court notes that the Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled. See 20 C.F.R. § 404.1525(a). Because the Listings define impairments that would prevent a claimant from performing any gainful activity—not just substantial gainful activity—the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability. See Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Thus, a claimant has the burden of proving a presumptively disabling impairment by presenting medical evidence that meets all of the criteria of a listed impairment or is equal in severity to all of the criteria for the most similar listed impairment. See 20 C.F.R. § 404.1526.

In this case, the ALJ explained in her decision that Plaintiff's impairments do not meet or medically equal the requirements of the impairments set forth in Listing 1.04, "Disorders of the spine." (R. 14-15). Listing 1.04 provides that to meet the listing for disorders of the spine, it must be established that Plaintiff experiences such a disorder, such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, and that she meets the criteria of one of three additional subsections. Plaintiff relies, in part, on subsection A, which requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff also relies on subsection C, which requires:

> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.04C, 20 C.F.R. Part 404, Subpart P, Appendix 1.

2

Moreover, all listings under 1.00, including 1.04A and 1.04C, require evidence of the inability to ambulate effectively or to perform fine and gross movements effectively. See Leibig v. Barnhart, 243 Fed. Appx. 699, 702 (3d Cir. 2007); Phillips v. Colvin, No. 1:16-cv-1033, 2017 WL 3820973, at *5 (M.D. Pa. Aug. 16, 2017); Listing 1.00(B)(2)(a). In this case, Plaintiff has not presented evidence of motor loss accompanied by sensory or reflex loss, and the record instead shows no muscle atrophy and intact/full strength and intact sensation and reflexes on various occasions. (R. 566, 781-82, 785, 788, 790-91, 797-98, 808, 855). Further, Plaintiff has not shown an inability to ambulate effectively, as no evidence was presented to show that she used a walker, two crutches or two canes during the relevant period. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b) (generally defining ineffective ambulation as having insufficient lower extremity functioning "to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities").

In her decision, the ALJ stated that she had considered whether Plaintiff's impairments, both singly and in combination, meet or medically equal the requirements of any of the impairments set forth in Listing 1.04, but she found that they did not. Since a thorough review of the record shows that Plaintiff's impairments clearly do not meet the criteria for Listing 1.04, the Court notes that the ALJ did not need to specifically analyze in her decision each of the Listing's requirements. Thus, despite Plaintiff's arguments to the contrary, the Court does not agree that the ALJ erred in failing to find that her impairments meet the criteria of Listing 1.04.

Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments do not meet the severity of Listing 12.04, "Depressive, bipolar and related disorders," at Step Three of the sequential analysis. Because the ALJ found that Plaintiff has certain severe impairments, including depression, post-traumatic stress disorder and borderline personality disorder, Plaintiff does have a condition or conditions that could potentially qualify as a disorder under Listing 12.04. (R. 14). The Court notes again, however, that the Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled, and thus the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability. See 20 C.F.R. § 404.1525(a); Sullivan, 493 U.S. at 532.

In this case, the ALJ explained in her decision that Plaintiff's mental impairments had been evaluated under several Listings, including Listing 12.04. (R. 15). Upon review of the relevant evidence of record, however, the ALJ found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria" of Listing 12.04 or any of the other Listings that were considered. (R. 15). The Court notes that, according to the statute, the required level of severity for Listing 12.04 is met only when the requirements in both A and B are satisfied, or when the requirements in A and C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Plaintiff asserts here that she meets the requirements in paragraph B. As the ALJ explained in her analysis of this issue, in order to satisfy the paragraph B criteria, Plaintiff's impairments have to result in at least one extreme or two marked limitations in certain broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing

themselves. (R. 15). The ALJ further explained that a "marked" limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited," while an "extreme" limitation means "the inability to function independently, appropriately or effectively, and on a sustained basis." (R. 15).

The ALJ discussed Plaintiff's symptoms and treatment in her decision, but she ultimately found that the above-stated requirements were simply not met. In fact, she addressed evidence relevant to the above elements, but concluded that Plaintiff's limitations included only the following: moderate limitation in understanding, remembering, or applying information; mild/moderate limitation in interacting with others; moderate limitation with regard to concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. (R. 15-16). Plaintiff asserts, however, that the record contains evidence that should have led the ALJ to find that she has marked limitations in each of the above-listed areas of functioning (but possibly only moderate to marked limitations in interacting with others). In support of her contention, Plaintiff cites to a psychiatric treatment summary (which did not include contemporaneous treatment records), her treatment records from Stairways Behavioral Health (which showed deficits of mood and affect, but otherwise indicated findings within normal limits), and the Social Security questionnaires she had submitted. Such evidence does not conclusively show marked or extreme limitations in Plaintiff's areas of functioning, and the Court cannot simply reweigh the evidence at this juncture in order to come to a different conclusion than that reached by the ALJ as discussed above. See Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990). The ALJ has already considered the evidence of record and made findings on this issue, and the Court notes that substantial evidence supports that decision. The Court therefore finds that the ALJ appropriately found that the criteria of paragraph B of Listing 12.04 are not satisfied. (R. 16). Thus, after review of the ALJ's decision, the Court finds no merit in Plaintiff's argument that the ALJ erred in failing to find that her mental impairments meet the severity of Listing 12.04.

Third, Plaintiff argues that the ALJ improperly assessed her RFC because the evidence of record does not support a finding that Plaintiff is capable of the level of work described therein. Plaintiff further asserts that the ALJ should not have relied upon the hypothetical question to the VE that was based on her RFC. The Court notes that a claimant's RFC is the most that she can do despite her limitations, and that the determination of a claimant's RFC is solely within the province of the ALJ. See 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a). In formulating a claimant's RFC, the ALJ must weigh the evidence as a whole, including medical records, medical source opinions, a claimant's subjective complaints, and descriptions of his or her own limitations. See 20 C.F.R. §§ 404.1527, 404.1529, 404.1545.

Here, Plaintiff contends generally that the medical evidence of record does not support a determination that she could perform flexion, extension and rotation of the neck up to one third of the day ("required to meet the definition of 'occasional'"), that her ability to walk and stand would be compromised, that the sitting involved in light work would involve more skilled positions than she is capable of performing, and that she would have difficulties with hand or foot controls. (Doc. No. 8, at 19-20). Plaintiff does not, however, point to specific evidence of record showing that such limitations should have been included in her RFC. In fact, the evidence

of record includes physical examinations consistently documenting Plaintiff denying neck pain and showing pain-free cervical range of motion (R. 782, 785, 788, 791, 797, 808), physical examinations documenting Plaintiff having full strength, normal gait and station and no muscle atrophy (R. 566, 602, 855), and opinions showing Plaintiff could stand or walk 6-8 hours in an eight-hour workday (R. 79, 570). Moreover, the Court notes that, in reaching her conclusions here regarding Plaintiff's RFC, the ALJ reviewed and engaged in discussion of a great deal of evidence, including the medical evidence of record, the opinions in the record, and Plaintiff's testimony. (R. 15-19). Upon review of the record, the Court cannot find that the ALJ erred in formulating the RFC in this case.

Nevertheless, Plaintiff further claims that, because her RFC is erroneous, the ALJ erred in relying on the answer to the hypothetical question she posed to the VE based on that RFC. According to the ALJ's RFC in this case, Plaintiff was capable of performing light work as defined in 20 C.F.R. § 404.1567(b), with certain additional limitations. (R. 16). Because Plaintiff's ability to perform all or substantially all of the requirements of this level of work was impeded by additional impairments, the ALJ properly sought the advice of a VE to determine the effect that Plaintiff's additional limitations had on the work available to her. Thus, the ALJ posed a series of hypothetical questions to the VE, inquiring whether an individual with Plaintiff's age, education, work experience and RFC could perform jobs that exist in significant numbers in the national economy. (R. 20, 56). In response, the VE testified that such an individual could in fact perform the requirements of representative occupations such as mail clerk, non-postal (70,000 jobs nationally), office helper (78,000 jobs nationally), and garment sorter (111,000 jobs nationally). (R. 20, 56-57). The ALJ subsequently concluded, based on this testimony, that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that a finding of "not disabled" was therefore appropriate. (R. 20). Because the Court finds that the ALJ's RFC is supported by substantial evidence, the Court does not find that the ALJ erred in posing her hypothetical question to the VE, and in subsequently finding the existence of jobs that Plaintiff could perform, based on that RFC.

Fourth, Plaintiff contends in a related argument that the ALJ erred in failing to consider, in addition to the above-referenced VE testimony, the VE's responses to various follow-up questions about possible additional limitations. In fact, as discussed, supra, the ALJ relied in her decision on the answer provided by the VE to the ALJ's hypothetical question based on the RFC that was ultimately found in this case. The ALJ did not, however, also consider the VE's responses to additional questions about limitations that were not, in the end, included in the RFC. Plaintiff argues, however, that the ALJ should also have considered the VE's responses to follow-up questions, including whether there would be work for a person who would be off-task more than 10% of the workday, or whether there would be work for a person who would miss more than one day of work per month. (R. 57-58). Plaintiff asserts, again without citing to any specific evidence of record, that her impairments limit her in both of these ways, and that the ALJ's consideration of the testimony of the VE regarding these additional limitations would have led to a finding that she is disabled.

5

It is important to note that, while the hypothetical question to the VE must accurately portray the claimant's impairments, such question need only reflect those impairments that are adequately supported by the record. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also 20 C.F.R. § 404.1545(a)(1) (explaining that your RFC "is the most you can still do despite your limitations"). Plaintiff correctly points out that inclusion of the above-referenced limitations would have, according to the VE's testimony, indicated that such an individual could not maintain employment. (R. 57-58). However, while follow-up questions were posed regarding whether such additional limitations would limit an individual's ability to perform work, when the ALJ ultimately formulated Plaintiff's RFC, she did not find that these additional restrictions needed to be included therein. The ALJ therefore did not need to consider the responses from the VE to such additional hypothetical questions.

The Court emphasizes that the ALJ clearly explained the reasoning underlying Plaintiff's RFC, which formed the basis for the ALJ's hypothetical question regarding the ability of an individual such as Plaintiff to perform jobs in the national economy. Additionally, the ALJ sufficiently discussed the record in this case in her analysis. Quite simply, Plaintiff never established that she would require the additional restrictions regarding absences and time off task that were included in the follow-up hypothetical questions to the VE. Thus, the Court finds that, in her decision, the ALJ did not err in relying upon the response to an appropriate hypothetical question which included those limitations, properly portrayed in the RFC, that were supported by the record.

Lastly, Plaintiff argues that she was denied a fair hearing due to the ALJ's questioning being "almost confrontational" because Plaintiff had adopted her grandchildren. (Doc. No. 8, at 22). The Social Security regulations provide that "'[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.'" Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (quoting 20 C.F.R. § 404.940 (1994)). Additionally, the plaintiff "must bring any objections to the attention of the ALJ, and the ALJ shall decide whether to continue the hearing or withdraw." Id. Then, if the ALJ does not withdraw, the plaintiff "may present objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another ALJ." Id. Thus, the procedures provide that Plaintiff's representative here should have, at the administrative hearing, "alleged that the ALJ was prejudiced and requested that [she] disqualify [herself]." Id. That did not occur, however, and, while Plaintiff could be deemed to have waived a bias claim by failing to raise it in the manner specified in the regulations, the Court finds, regardless, that no valid bias claim exists here. See Hummel v. Heckler, 736 F.2d 91, 94 (3d Cir. 1984); see also Ventura, 55 F.3d at 902 (noting that, by raising the bias issue at the administrative hearing, the plaintiff in that case abided by the procedures set forth in the regulations regarding disqualification of ALJs).

In order to show bias, Plaintiff has to show that the ALJ's behavior was "so extreme as to display clear inability to render a fair judgment." Liteky v. United States, 510 U.S. 540, 551 (1994). Moreover, an ALJ's impatience or even anger does not establish bias. See id. at 555-56 (noting that expressions of impatience, dissatisfaction, annoyance or even anger do not establish

6

bias). In fact, the ALJ's "only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled." Money v. Barnhart, 91 Fed. Appx. 210, 215 (3d Cir. 2004).

In this case, Plaintiff has not shown evidentiary gaps in the record, nor did the ALJ interfere in any way with Plaintiff's introduction of evidence or testimony. Rather, the ALJ provided Plaintiff with a full opportunity to testify and develop the administrative record. Upon review of the transcript, the Court finds that the ALJ engaged in routine questioning in order to draw out and clarify Plaintiff's allegations, and that her behavior towards Plaintiff and her counsel along with her questioning was professional. In particular, Plaintiff contends that the ALJ was overly focused on Plaintiff's range of daily activities because she had adopted her two young grandchildren and is their sole caregiver. The Court understands that Plaintiff herself had a traumatic childhood and that she adopted her grandchildren for extremely unfortunate reasons. Nevertheless, activities of daily living are a relevant consideration in assessing the severity and limiting effects of a claimant's alleged symptoms. See 20 C.F.R. § 404.1529. Thus, the ALJ considered the activities involved with Plaintiff raising her grandchildren among her many other daily activities, including doing household chores, driving, doing laundry and shopping. (R. 17). Moreover, the ALJ's decision clearly shows that Plaintiff's daily activities were only one of many factors considered in her analysis. As noted, supra, the ALJ also considered Plaintiff's testimony, her treatment notes, the diagnostic findings in the record, and the medical opinions provided. The Court does not agree, however, that the ALJ's consideration of the exertional level involved in raising young children resulted in Plaintiff being denied a fair hearing.

Accordingly, in no way does the record indicate anything remotely akin to "deep-seated favoritism or antagonism that would make fair judgment impossible" regarding Plaintiff's case. Liteky, 510 U.S. at 555. As the Third Circuit has explained, "[t]he right to an unbiased ALJ is particularly important because of the active role played by ALJs in social security cases" in which they "have a duty to develop a full and fair record." Ventura, 55 F.3d at 902. In fulfilling that duty, "an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits," and the Court finds here that the comments and questions addressed to Plaintiff and her attorney regarding Plaintiff's adoption of her young grandchildren do not demonstrate improper behavior on the part of the ALJ. Id.; see also Valenti v. Comm'r of Soc. Sec., 373 Fed. Appx. 255, 258 (3d Cir. 2010) (finding that the plaintiff had not identified any evidence indicating bias or misconduct by the ALJ, unlike in Ventura, where the ALJ "had engaged in coercive, intimidating, and irrelevant questioning of the claimant and had improperly interfered with the claimant's attempt to introduce evidence establishing disability"). Thus, the Court finds that Plaintiff has not shown bias or improper behavior on the part of the ALJ, nor that the ALJ in any way prevented Plaintiff or her attorney from fully developing the record in this case.

As to any additional arguments mentioned summarily by Plaintiff in her brief, the Court finds that she has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

7

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 9) is GRANTED.

s/ Alan N. Bloch<br>United States District Judge

ecf:          Counsel of record

---

In sum, the Court finds that the ALJ did not err in finding that Plaintiff's physical and mental impairments do not meet the severity of the Listings. The Court also finds that the ALJ did not err in assessing Plaintiff's RFC in this case, nor did she err in formulating the hypothetical question to the VE based on that RFC. Likewise, the Court finds that the ALJ did not fail to consider the VE's testimony. Finally, the Court finds that Plaintiff was not denied a fair hearing in this case. Accordingly, the Court affirms.